OPINION
{¶ 1} Defendant-appellant Jeffrey Antonio Brown appeals from his conviction and sentence, following a no-contest plea, upon one count of Possession of Crack Cocaine, in an amount less than one gram. Brown contends that the trial court erred by denying his motion to suppress evidence obtained as the result of an unlawful search and seizure. Brown contends that he was initially stopped without sufficient reasonable and articulable suspicion. He further contends that although the evidence he seeks to suppress was obtained as the result of his arrest, pursuant to an outstanding warrant, that evidence must nevertheless be excluded because his identity, which led to the arrest, was obtained as the result of the unlawful investigatory stop.
 {¶ 2} We conclude that there is evidence in the record to support the trial court's finding that the police officer who stopped Brown had a sufficient reasonable and articulable suspicion to justify the brief, investigatory stop to which Brown was subjected. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Dayton police officer Richard Taylor, who had four years experience as a police officer at the time, was on patrol in a marked police cruiser, with his partner, Dayton police officer trainee Molly Sharp, when Brown first came to his attention. Taylor described the incident as follows:
 {¶ 4} "Q. Tell us at that time what you observed.
 {¶ 5} "A. At this time we were sitting up watching a drug house where we observed the defendant walking northbound on Pritz Avenue. At this time, we continued to watch the house. Approximately a minute or two later, we then observed the defendant walking southbound on Mabel Avenue which was then to our left. Defendant then started to cut through a yard towards us on the north side of 205 Mabel.
 {¶ 6} "As he started cutting through this yard, he was looking back over his shoulder. It seemed kind of odd to us, seemed like he was trying to make sure nobody was watching him or possibly nobody was following him. He continued to look around until he noticed our police cruiser.
 {¶ 7} ". . .
 {¶ 8} "Q. So what did you do next?
 {¶ 9} "A. At this time due to suspicious behavior, thinking maybe he was going to try to break into the house, we got out of the car and he saw us. He started walking towards us and we made contact with him in the alley.
 {¶ 10} "Q. When you made contact with him in the alley, it was you and your partner?
 {¶ 11} "A. Yes.
 {¶ 12} "Q. Did you have your guns drawn?
 {¶ 13} "A. No, I did not.
 {¶ 14} "Q. What did you say to him when you made contact?
 {¶ 15} "A. Actually we said, hey, come here, how are you doing? Dayton Police. And he walked over towards us.
 {¶ 16} "Q. And then what happened?
 {¶ 17} "A. At this time I asked him if he had any identification on him. He stated he did not. I asked him if he knew his social security number and he provided us a social security number.
 {¶ 18} "Q. When you first made contact with the defendant, what was your purpose in making contact with him?
 {¶ 19} "A. To find out who he was and what he was doing in that yard. He seemed awful suspicious, looking around. Like, we thought he was possibly going to try to break into the house.
 {¶ 20} "Q. So you were basically doing a field interview?
 {¶ 21} "A. Yes.
 {¶ 22} "Q. Did the defendant provide his identification?
 {¶ 23} "A. He provided a social security number.
 {¶ 24} "Q. What did you do once you said that?
 {¶ 25} "A. At this time, I stood outside with the defendant. She went in our car computer, ran his social security number through LEADS and it revealed he had a felony warrant out for his arrest.
 {¶ 26} "Q. At that time, what happened?
 {¶ 27} "A. I asked him if that's what his social security number was and he said yes and I placed him under arrest for the warrant."
 {¶ 28} Following Brown's arrest, a small baggie of crack cocaine was found upon his person. Brown was charged with Possession of Crack Cocaine, in an amount less than one gram.
 {¶ 29} Brown moved to suppress the evidence obtained from his person, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, Brown's motion was denied. Thereafter, Brown pled no contest to the charge. He was then found guilty, and sentenced accordingly. From his conviction and sentence, Brown appeals.
 II {¶ 30} Brown's sole assignment of error is as follows:
 {¶ 31} "The trial court erred by overruling Mr. Brown's motion to suppress the evidence recovered as a result of the police illegally seizing him."
 {¶ 32} A police officer may stop and briefly detain an individual in order to investigate possible criminal behavior, if the police officer is able to point to specific and articulable facts, which, taken together with the rational inferences from those facts, give rise to a reasonable suspicion that criminal activity is occurring or is about to occur. Terryv. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. In Terry, the police officers who effected the investigative stop did not actually observe the suspect commit a criminal act, but concluded, based upon their observations and their training and experience as police officers, that the person they detained may have been "casing" a store, in preparation for committing a burglary. By contrast, in the case before us, Taylor reasonably suspected, based upon the time of the day, and the fact that Brown turned around and looked behind him "numerous times," that Brown may have been committing a criminal trespass. Taylor also formed a suspicion that Brown may have been planning to break into the house on the lot he was cutting through.
 {¶ 33} Brown's suspicious behavior occurred during the middle of the night. The suspect in Terry, by contrast, was observed acting suspiciously at about 2:30 in the afternoon, in downtown Cleveland
 {¶ 34} In the case before us, the trial court concluded that Taylor had a suspicion of criminal activity that was based on reasonable and articulable facts. The trial court reasoned as follows in its written decision overruling the motion to suppress:
 {¶ 35} "Brown's Counsel contends that Brown was not seen committing any criminal act. This Court disagrees. He was observed `cutting through' a private yard. It is reasonable to suspect that this was a criminal trespass.
 {¶ 36} "However, even if Brown had not been seen committing a criminal act, it does not follow that the officers lacked authority to conduct a brief investigatory stop. Terry held that reasonable suspicion based on `a series of acts, each of them perhaps innocent' but when `viewed together warranted further investigation'. Terry, supra at 22. `[I]n certain circumstances wholly lawful conduct may justify an officer's suspicion that criminal activity is afoot . . . Moreover, circumstances which appear innocent to the outside observer may suggest criminal activity to experienced law enforcement personnel, and in determining whether reasonable suspicion exists, law enforcement authorities may assess these circumstances in light of their experience.' (citations omitted). State v. Wilkins (Ohio 2nd Dist. Ct. of Appeals, June 19, 1998), 1998 WL 320940.
 {¶ 37} "In the case at bar, the circumstances leading up to Brown's stop were as follows:
 {¶ 38} "• Brown was seen walking northbound on Prince Avenue. A few minutes later, he was seen walking southbound on Mabel Street.
 {¶ 39} "• Brown `cut through' a private yard.
 {¶ 40} "• As he was walking very slowly through the yard, Brown looked back over his shoulder numerous times. He also turned his body to look back.
 {¶ 41} "These are specific and articulable facts that would lead an officer of reasonable caution to suspect a criminal trespass was occurring, and that additional criminal activity may have been afoot. [It] was not unreasonable for Officer Taylor to have suspected the possibility that Brown might have been planning to break into a house.
 {¶ 42} "This Court finds that Brown's stop was permissible under Terry v. Ohio."
 {¶ 43} We concur in the reasoning of the trial court. We conclude that Taylor was justified in subjecting Brown to a brief, investigatory stop. We note that in the case before us, unlike in Terry v. Ohio, Brown was not manhandled in any way, and no frisk for weapons was performed during the investigatory stop, before Brown was arrested.
 {¶ 44} Both parties make interesting arguments concerning whether Brown's arrest, pursuant to an outstanding warrant, immunized evidence obtained from that arrest from any application of the exclusionary rule based upon the alleged illegality of the investigatory stop. Because we conclude that the investigatory stop was proper, we find it unnecessary to address these arguments.
 {¶ 45} Brown's sole assignment of error is overruled.
 III {¶ 46} Brown's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Brogan and Young, JJ., concur.